UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SEAN P. O'NEEL,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:25-cv-1370-TLN-SCR

**FINDINGS AND RECOMMENDATIONS**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the undersigned recommends that Plaintiff's motion for summary judgment be DENIED, and the Commissioner's cross-motion for summary judgment GRANTED.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for SSI on December 13, 2021, alleging a disability onset date of

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); *Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels[.]").

November 22, 2002. Administrative Record ("AR") 17.[2] The application was disapproved initially on August 31, 2022, and on reconsideration on October 10, 2023. AR 17. On April 10, 2024, ALJ Joseph Marcee presided over the hearing on Plaintiff's challenge to the disapproval. AR 37-58 (transcript). Plaintiff appeared with Angie Saltsman as a non-attorney representative and testified at the hearing. AR 37, 43. Kelly Bartlett testified as a Vocational Expert ("VE"). AR 38, 53.

On May 14, 2024, the ALJ found Plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 17-31 (decision), 32-36 (exhibit list). On March 26, 2025, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. AR 1-3 (decision), 4-5 (exhibit list).

Plaintiff filed this action on May 14, 2025. ECF No. 1; *see* 42 U.S.C. § 1383c(3). Cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been briefed. ECF Nos. 9 (Plaintiff's summary judgment motion), 16 (Commissioner's summary judgment motion). Plaintiff has also filed a reply brief in support of its motion. ECF No. 17.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1971, and accordingly was an individual closely approaching advanced age as of the application date. AR 30; *see* 20 C.F.R § 416.963(c). Plaintiff can communicate in English and has a high school education. AR 354, 356. He worked as a cook and a temp agency's general laborer for a few months each in 2002 and as a "foundry tender" in 2006. AR 356. He then did not work until 2019, when he was a chef for a catering service for a few months. AR 356. Asserted issues included congestive heart failure, gout, complications from back surgery, bipolar disorder, depression, chronic obstructive pulmonary disease ("COPD"), "right foot titanium," kidney failure, and high blood pressure. AR 355.

////

////

---

[2] Two copies of the AR are electronically filed collectively as ECF No. 8 (AR 1 to AR 853).

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *see also Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quotation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

SSI is available for eligible individuals who are "disabled." 42 U.S.C. § 1381a. An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id.*, § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.*, § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

**V. THE ALJ's DECISION**

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since December 13, 2021, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: degenerative disc disease; chronic obstructive pulmonary disease with emphysema; coronary artery disease; chronic systolic heart failure; obesity; intermittent explosive disorder; and cyclothymic disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs, stoop, kneel, crouch or crawl. The claimant may not work in an environment with exposure to extreme heat (over 90 degrees), extreme cold (under 30 degrees). The claimant may not have constant exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles. The claimant should never be exposed to environmental hazards such as high exposed places, moving mechanical parts and open bodies of water. The claimant can understand and remember detailed, but not complex, instructions. The claimant cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. The claimant can have occasional interactions with supervisors and coworkers but can never interact with the public. The claimant can deal with occasional changes in a routine work setting.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on September 10, 1971, and was 50 years old, which is defined as an individual closely approaching advanced

> age, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has at least a high school education (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since December 13, 2021, the date the application was filed (20 CFR 416.920(g)).

AR 19-31. As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 31.

## VI. ANALYSIS

### A. Plaintiff Fails to Adequately Challenge the ALJ's Discounting of Subjective Testimony

1. Testimony and Pre-Hearing Allegations

In his May 24, 2022 function report,[3] plaintiff asserted that his memory is bad enough that he forgets to pay bills and if he used his inhaler on a particular day. AR 372-73. When asked how long he can pay attention, he replied, "As long as you're paying me." AR 375. His ability to follow oral instructions varies by task, whereas he needs to read any written instructions 3-4 times. AR 375. He claimed he was capable of handling stress but not changes to his routine. AR 376.

Plaintiff further asserted that he can go out alone but only does so when necessary because he does not like large crowds, or people in general. AR 373-74. He only gets along with people he likes, as opposed to authority figures, and does not hang out with people because he is generally unable to do the things he once could. AR 374-75. His inability to control his temper

---

[3] Plaintiff only disputes the decision to discount his "allegations of mental dysfunction." ECF No. 9 at 25. Consequently, the Court will not comprehensively summarize the function report or ALJ decision to discount Plaintiff's assertions as to physical dysfunction.

with his new boss led to his termination from a job with the railroad. AR 375.

Plaintiff affirmed at the hearing that although he had previously applied for SSI and had those applications denied, the application currently at issue is based on symptoms that either did not exist at the time or have definitively worsened. AR 43-44. Plaintiff also admitted to prior drug use, but claims he "grew up" and abandoned drugs years before this application. AR 44.

The catering chef job in 2019 lasted only three days, hence his earnings for that year totaling $506. AR 44. Before that, he was a mechanic taking odd jobs from 1999 to about 2010, averaging $1,000 to $1,500 per month by working on various parts of cars. AR 45. He was lifting 10-20 pounds throughout the day as a mechanic, and also used a few electronic diagnostic tools. AR 45-46.

Plaintiff's COPD requires him to use an inhaler throughout the day. AR 46. Plaintiff lives in a house owned by his roommate. AR 49. He spends most of his day roaming the house and trying to repair things like the screen door's frame. AR 46-47. Repairing that frame did not require any lifting because the welder was on a rolling cart and the security screen remained upright in the frame. AR 47. Plaintiff used to fabricate things too, but he could not remember the last thing he made. AR 47. Aside from this, he usually watches TV while lying in bed, which allows him to avoid the pain that he immediately feels when standing on his feet. AR 51.

Plaintiff uses a back brace between one to three times a month. AR 47-48. He might put it on when helping his roommate get groceries from the car or after he somehow throws his back out, like by twisting too much when he gets up in the morning. AR 47-48. He uses crutches when his gout flares up, but it had been a while since that was last necessary. AR 48. As far as Plaintiff knows, none of his medications have any side effects, but he is better at remembering to take morning medications than evening ones. AR 50, 52. This is part of a larger pattern where recently, he tells himself he needs to do something later that day or the next day but forgets by then. AR 52.

Plaintiff had driven to the grocery store the night before the hearing to buy food. AR 48. The heaviest thing he lifted was a pack of soda cans, but he admitted he could probably lift a 24-pack of water bottles if he had to. AR 48-49. He estimates he spent 20 minutes in the store,

mostly waiting in line. AR 49. He usually limits his shopping trips to getting what he knows he needs and leaving. AR 51-52. He does occasionally walk the dog when his heart allows, but the two only walk about six houses down the street and at a slow pace. AR 49.

Plaintiff asserted he was unable to concentrate on even simple tasks for long if they frustrate him, at which point he would likely have some physical reaction. AR 50. When a problem arose while trying to help his roommate hang hooks for holding pots and pans, for example, he got so frustrated he threw them across the room. AR 50. If the source of frustration is a human, either he walks away or "it's not very good for the other person." AR 50-51.

2. ALJ Holding

The ALJ acknowledged Plaintiff's intermittent explosive disorder and cyclothymic disorder, and the subjectivity and overlap between mental diagnoses as a whole. AR 25. He also acknowledged some findings from two consultative examinations that would be consistent with Plaintiff's allegations. In July 2022, for example, Plaintiff reported to Dr. Troy Ewing depression, anxiety, a decrease in his need for sleep, and an aversion to leaving the house or interacting with crowds. AR 25 (citing AR 801). As to his attention span, Plaintiff could only recite the first four digits of a number told to him, and none when asked to do so in reverse order. AR 25 (citing AR 803).

In September 2023, meanwhile, plaintiff reported to Dr. Lauri Stenbeck that it was easy to get angry, aggravated, or frustrated by small things, and to become physically aggressive towards others. AR 26 (citing AR 833). Plaintiff further reported low motivation and spending a lot of time in bed. AR 26 (citing AR 833). As to his memory, Plaintiff could only recall one of three words after a brief delay. AR 26 (citing AR 836). As to his attention span, Plaintiff could only recite the first four digits of a number told to him, and three when asked to do so in reverse. AR 26 (citing AR 835). Finally, as to his ability to perform calculations, Plaintiff had difficulty making change. AR 26 (citing AR 836).

Nevertheless, the ALJ found that testimony as to the intensity, persistence, and limiting effects of Plaintiff's symptoms was somewhat inconsistent with the record taken as a whole. AR 24. During the same July 2022 and September 2023 tests, for example, Plaintiff was alert and

oriented, denied suicidal or homicidal ideations, demonstrated a linear and logical thought process, and had adequate insight and judgment. AR 26, 802-04, 834-36. He was also polite, made eye contact, and demonstrated intact intelligence and an adequate fund of knowledge. AR 26, 802-04, 834-36. During the July 2022 examination, Plaintiff had a fair memory based on his ability to remember two out of three words recited to him after a brief delay, and adequate concentration based on his ability to complete serial 3's and to spell "world" forwards and backwards. AR 26, 803-04. He was also capable of making change, demonstrating that his calculation skills were intact. AR 26, 804. During the September 2023 test, meanwhile, his concentration remained "good" based on his ability to again spell "world" forwards and backwards, and was able to interact appropriately despite his impaired attention. AR 26, 835.

Turning to other tests in the record, the ALJ noted various instances of normal mental status exams (AR 807, 818, 840, 843), normal mood (AR 453, 777, 843), cooperation (AR 452), good judgment (AR 807, 843), and being alert and oriented (AR 784, 791). AR 26. The ALJ also noted that Plaintiff never sought mental health treatment or took medication for his mental ailments. AR 26.

The ALJ also found that Plaintiff's daily activities did not generally support his pain and impairment allegations. Plaintiff was able to perform household chores, prepare simple meals, shop for personal items, perform self-care activities, socialize, and drive – the latter of which required some degree of concentration and attention. AR 26 (citing AR 803, 835). The ALJ found that the physical and mental capabilities needed for such tasks overlap with those needed to obtain and maintain employment. AR 26.

3. Governing Law

Evaluating a claimant's subjective testimony is a two-step process. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014

(9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. *Id.* Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ can only reject the claimant's testimony about the severity of such symptoms if there are "'specific, clear and convincing reasons for doing so.'" *Id.* at 1014-15 (internal citations omitted); *see also Smartt v. Kijakazi*, 53 F.4 489, 494 (9th Cir. 2022) (applying this standard even "[w]hen objective medical evidence is inconsistent with a claimant's subjective testimony").

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." *Thomas*, 278 F.3d at 958.

Evaluating the "intensity and persistence" of the symptoms of an impairment will involve considering all available evidence, including "medical history, the medical signs and laboratory findings, and statements about how … symptoms affect" the plaintiff. 20 C.F.R. § 404.1529(a). Relevant factors include:

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms; […]
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; [and]
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.);

20 C.F.R. § 404.1529(c). As to the fourth and fifth factors (i.e., "iv" and "v" directly above), the Ninth Circuit permits ALJs to consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (quoting *Fair*, 885 F.2d at 603); *see also Plummer v. Berryhill*, Case No. 2:16-cv-00753-AC, 2017 WL 2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that

"failure to pursue recommended treatment discredited…[plaintiff's] subjective testimony.").

4. The ALJ's Analysis of Plaintiff's Daily Activities is Incomplete

An ALJ should not penalize claimants "for attempting to lead normal lives in the face of their limitations." ECF No. 15 at 12-13; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). But an ALJ can rely on a claimant's daily routine to the extent that it is inconsistent with the degree of disability that plaintiff alleges. *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment). In other words, an ALJ may rely on the fact that a plaintiff "engages in numerous daily activities involving skills that could be transferred to the workplace" if the ALJ "mak[es] specific findings relating to those activities." *Burch*, 400 F.3d at 680-81.

In this regard, Plaintiff slightly misstates the standard. He cites *Orn*'s quotation of *Fair* to argue the ALJ must show that "a claimant is able to spend *a substantial part of his day* engaged in pursuits involving the performance of physical functions that are transferable to a work setting." ECF No. 9 at 27-28; 495 F.3d at 639 (quoting 885 F.2d at 603) (emphasis added). *Fair* did not require this level of activity, but rather found this adequate while contrasting it against "many home activities [that] are not easily transferable to what may be the more grueling environment of the workplace[.]" 885 F.2d at 603. As Defendant notes, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." ECF No. 16 at 8-9; *Molina*, 674 F.3d at 1113.

Nevertheless, Plaintiff is correct that the ALJ failed to adequately contrast the skills required for these activities with subjective testimony. ECF No. 9 at 27. The only non-conclusory argument is that driving requires a degree of concentration and attention. AR 26. This ignores how infrequently Plaintiff drives, Plaintiff's routine of not leaving the house unless necessary, and Plaintiff's avoidance of large gatherings. AR 373. The ALJ does not explain why the few times Plaintiff manages to drive implies an ability to focus for an entire workday, or even a substantial part of one, frequently enough to meet workplace performance standards. The ALJ

therefore cannot rely on daily activities to discount subjective testimony.

5. <u>The ALJ's Interpretation of the Medical History Ignores the Varying Nature of Mental Dysfunction</u>

Plaintiff objects to the ALJ's finding that the medical record also contradicts his testimony. He argues that the decision improperly prioritizes the findings of general clinicians (AR 452, 777, 784, 791, 807, 818, 840, 843) over the results of psychological examinations (AR 449, 803, 805, 835-37). ECF No. 9 at 26-27. In other words, he argues the ALJ needed to explain how the allegations were contradicted by "abnormal mental status examination findings that were present during every mental health examination." Id. at 26-27.

At first glance it seems the ALJ showed that these findings were not, in fact, present during every mental health examination. He cites some of the same mental examinations that Plaintiff now cites in his motion, thereby showing that normal findings were mixed into abnormal ones. Whereas the cited tests both reflect Plaintiff's aversion to leaving the house and substandard attention span, they also found that he was alert and oriented; denied suicidal or homicidal ideations; and had a linear and logical thought process and adequate insight and judgment. AR 26, 802-04, 834-36. Additionally, Plaintiff only struggled with calculation during one of those examinations, and the exact degradation of his attention span varied across tests. AR 26, 803-04, 835-36.

Further, Defendants are usually correct that Plaintiff's cherry-picking argument "cuts both ways." ECF No. 16 at 9; *White v. Comm'r Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009)). One could argue, in other words, that Plaintiff selectively interprets evidence favoring a finding of disability when arguing that the ALJ selectively interpreted evidence disfavoring it. This is why under the substantial evidence standard, if two competing interpretations are rational, the ALJ's interpretation receives deference. *Burch,* 400 F.3d at 679.

This deference, however, has a caveat that applies to the case at hand. When assessing claimant testimony as to mental dysfunction, ALJs must keep in mind that "symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. It is therefore an error to "pick out a few isolated instances of improvement … and to treat them as a basis for concluding a claimant

is capable of working." *Id.* (citations omitted). The ALJ arguably acknowledges this by saying that he understands "the inherently subjective nature of mental diagnoses" and has considered this in his analysis. AR 25. When an ALJ cites a handful of normal findings and prioritizes them over findings of mental impairment by more qualified experts, however, such an assertion becomes little more than lip service.

In light of the heightened standard for evaluating allegations of mental impairment, the ALJ failed to adequately demonstrate that Plaintiff's testimony is contradicted by the medical record.

6. The Errors Are Harmless

In *Stout*, the Ninth Circuit concluded that an error is harmless when it is "inconsequential to the ultimate nondisability determination." 454 F.3d at 1055. The Ninth Circuit has clarified that the "relevant inquiry…is not whether the ALJ would have made a different decision absent any error … it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008). Multiple reasons for a particular conclusion can render an error in one harmless because the others provide "a basis for the court to review the ALJ's decision[.]" *Id.* at 1163; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence[.]'") (internal citations omitted). If an ALJ provides multiple "record-supported reasons for discrediting the claimant's testimony," an error in any one reason is harmless on its own. *Stout*, 454 F.3d at 1055 (citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir.2004)).

As discussed above, Plaintiff adequately challenges two of the reasons given for discounting his testimony – daily activities and normal findings in the medical record. The ALJ, however, provided a third that Plaintiff has failed to challenge – the fact that he "did not attend mental health treatment nor take psychiatric medication." AR 26. An ALJ may discount medical testimony based on a failure to seek treatment or follow a recommended course of treatment. *Burch*, 400 F.3d at 681; *Fair*, 885 F.2d at 603. On this issue, in a reply brief, Plaintiff cites

*Nguyen v. Chater*, which stated: "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." ECF No. 17 at 2 (quoting 100 F.3d 1462, 1465 (9th Cir. 1996)). However, Plaintiff does not contend that the record shows that "the failure to seek mental health treatment was attributable to the mental impairment as opposed to personal preference." *Gegan v. Kijakazi*, No. 1:22-cv-00005-GSA, 2023 WL 3304432, at * 5 (E.D. Cal. May 8, 2023). The failure to seek mental health treatment constituted sufficient reason for the ALJ to discount subjective testimony as to mental dysfunction. Errors as to other reasons were therefore harmless.

**B. Plaintiff Fails to Demonstrate Error in the Analysis of Expert Opinions**

1. <u>Governing Principles</u>

In evaluating medical opinion evidence, ALJs give no specific evidentiary weight to any particular type of opinion or source, but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are defined in the regulations as follows:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.* In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

2. Dr. Saxby and Dr. Morando

In August 2022, Dr. Stephen Saxby opined that Plaintiff had no understanding or memory limitations, but did have sustained concentration and persistence limitations. AR 94. Those limitations mostly did not affect Plaintiff's ability to follow short and simple instructions or to follow a routine or schedule, but would moderately limit his ability to follow detailed instructions, to maintain attention and concentration for extended periods, and to work in coordination with or in proximity to others without being distracted by them. AR 94-95. Dr. Saxby added that Plaintiff was moderately limited in his ability to complete a workday or workweek without interruptions or unreasonable rest periods, explaining he could maintain the required pace for 2 hours at a time if there were only 1-2 tasks to repeatedly perform. AR 95.

As to Plaintiff's social interactions, Dr. Saxby opined that he was moderately limited in his ability to interact appropriately with the general public. AR 95-96. Plaintiff could, however, interact appropriately with supervisors and coworkers. AR 96. As to adaptability, Plaintiff could only adapt to simple and routine changes in a workplace. AR 96-97.

In September 2023, Dr. M. Morando agreed that Plaintiff could follow short and simple instructions but would be moderately limited in his ability to follow detailed instructions, maintain attention and concentration for extended periods, and work in coordination with or in proximity to others without being distracted by them. AR 123-24. He also agreed that Plaintiff could only maintain the concentration, persistence, and pace needed to complete 1-2 step tasks for short periods. AR 124. He also found that Plaintiff's ability to interact appropriately with the general public was moderately limited, and that even with co-workers and supervisors he should mostly limit interactions to low-stress, non-confrontational settings. AR 125. As to adaptability, Plaintiff could only adapt to simplistic changes in routine. AR 125-26.

The ALJ ruled that these opinions were mostly persuasive. AR 28. Plaintiff had reported that he did not handle changes to his routine well and struggled to get along with others. AR 28, 375-76. During his psychiatric evaluations with Dr. Ewing and Dr. Stenbeck, he demonstrated impaired attention and asserted that he was quick to get physically and verbally aggressive with others. AR 28, 803, 833, 835. However, aside from Plaintiff failing to seek treatment for his mental conditions, he had normal mental exams implying some degree of adaptability. AR 28, 807, 818, 840, 843. That he could concentrate enough to spell "world" backwards and count in intervals of three implied an ability to remember detailed instructions and perform work at a non-production rate pace. AR 28, 803, 835. The ALJ then cited instances of a normal and cooperative mood, and where Plaintiff made eye contact, which was consistent with tolerating occasional interactions with supervisors and coworkers. AR 28.

Plaintiff first argues that the ALJ failed to explain why Plaintiff was capable of remembering "detailed, but not complex, instructions" despite Dr. Saxby and Dr. Morando limiting him to 1-2 step instructions. ECF No. 9 at 11; AR 23. The ALJ did, in fact, explain that Plaintiff's ability to concentrate enough to spell "world" backwards and perform serial 3's implied a stronger capacity to follow instructions. AR 28, 803, 835. Plaintiff's argument that such "minimal examination findings" do not fulfill the requirement to analyze how consistent these opinions are with other evidence (*see* ECF No. 9 at 14) lacks any authority.

Plaintiff then challenges the ALJ's refusal to incorporate Dr. Morando's opinion that

Plaintiff can only handle superficial interactions with coworkers and supervisors in a low stress and nonconfrontational setting. ECF No. 9 at 13; AR 125. The ALJ's RFC instead only limits Plaintiff to "occasional interactions with coworkers and supervisors." AR 23. This ignores the fact that while Dr. Saxby agreed with Dr. Morando that Plaintiff should not interact with the general public, he did not adopt the same "low stress" limitation as Dr. Morando. AR 96. This discrepancy between the two experts is, in fact, sufficient evidence to find that the one expert's proposed additional limitations are not necessarily consistent with the record.

Plaintiff has failed to demonstrate that any decision to not integrate portions of Dr. Saxby and Dr. Morando's opinions into the RFC was in error.

3. Dr. Christina Cooper

The Court need not discuss in detail the findings of Dr. Cooper's August 2020 psychiatric evaluation. *See* AR 446-50. At issue is whether the ALJ's decision to not analyze this opinion when formulating the RFC constitutes an error.

Dr. Cooper's evaluation predated Plaintiff's application by over a year, but postdates the initial alleged disability onset date of November 2002. *See* AR 17. Plaintiff argues that this suffices for the opinion to be within the "relevant period" of evidence the ALJ must consider. ECF No. 9 at 16-17. Defendant responds that Plaintiff amended his alleged onset date during the hearing to December 13, 2021, the date of his application. ECF No. 16 at 5 (citing AR 42). Plaintiff replies that he never formally submitted such a motion, nor did the ALJ formally grant one. ECF No. 17 at 5. Plaintiff further argues that this was done for the sake of administrative convenience because agency policy does not permit payment of SSI benefits prior to the application date. *Id.*

The ALJ did, in fact, verbally grant a motion to amend the onset date immediately after Plaintiff's representative moved to do so. AR 42-43. Plaintiff cites no authority to show that this was improper. Nor does he cite authority that because benefits are usually only paid out from the application date, the onset date must match it. ALJs would not acknowledge both the application and disability onset dates in administrative decisions, as done here and in every other decision this Court has seen, were that the case. *See* AR 17.

Furthermore, Plaintiff's representative implicitly assumed the risk that amending the onset date would cause Dr. Cooper's report to not be considered. She acknowledged that this would cause the report to fall out of the relevant period, but asserted that the two that remained within the new relevant period "have fairly consistent findings as well as … fairly consistent residual functional capacities." AR 43. Plaintiff does not respond to Defendant's argument that because the ALJ did consider these opinions (AR 28-29), considering Dr. Cooper's duplicative opinion would not have yielded a different result. ECF No. 16 at 5. *Cf. Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding no error because although the ALJ did not discuss a particular medical review, it did discuss the neuropsychologist report that provided the basis for this review). As Defendant notes, Plaintiff bases his argument in part on a case that found harmless any error that occurred in not discussing a particular piece of evidence whose findings were similar to opinions that were given significant weight. ECF No. 16 at 5; AR 28-29; *Pacheco v. Berryhill*, 733 Fed. Appx. 356, 360 (9th Cir. May 1, 2018).

At best, the ALJ's failure to specify the amended onset date in his decision was a harmless error. The failure to consider Dr. Cooper's opinion, which then fell outside the relevant period, does not warrant remand.

4. <u>Dr. Troy Ewing</u>

Based on the observations during a July 2022 examination (*see supra* VI.A.2; AR 801-03), Dr. Ewing found that Plaintiff would be moderately limited in his ability to understand, remember, and perform complex written and oral instructions; complete a normal workday or workweek without interruptions due to his psychiatric conditions; interact with coworkers and the public; and deal with the usual stresses encountered in competitive work environment. AR 804-05. Plaintiff would also be mildly limited in his ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, and accept instructions from supervisors. AR 29, 804-05.

The ALJ found the opinion persuasive based on its supportability and consistency. AR 29. As for supportability, Plaintiff had reported being depressed, anxious, unable to leave the house, and sleeping less. AR 29 (citing AR 803-04). As to his attention span, Plaintiff could

only recite the first four digits of a number told to him, and none when asked to do so in reverse order. AR 29 (citing AR 803). This supported the "moderate limitations" in the report. AR 29.

At the same time, the ALJ held that Dr. Ewing's opinion did not merit a more stringent RFC than the one formulated. AR 29. Aside from never seeking psychiatric medication, Plaintiff had normal mood and mental status exams on various occasions. AR 29 (citing AR 807, 818, 840, 843). Additionally, at both the July 2022 examination and the September 2023 examination with Dr. Stenbeck, Plaintiff was able to spell "world" backwards and identify serial multiples of three. AR 29 (citing AR 803-04, 835). The ALJ found this consistent with an ability to understand and remember detailed instructions and perform work at a non-production rate pace. AR 29. That Plaintiff was cooperative and made eye contact during these examinations was also consistent with an ability to tolerate occasional interactions with supervisors and coworkers. AR 29 (citing AR 802-04, 834-36).

Focusing on the fact that the ALJ called this opinion "persuasive," Plaintiff then asks why he nevertheless did not adopt some of the RFC limitations assessed therein. ECF No. 9 at 18. Nothing in the RFC, for example, addresses Dr. Ewing's finding that Plaintiff would have moderate limitations in trying to complete a normal workday or workweek without interruptions resulting from his condition. Id.; AR 23. Nor does it account for the moderate limitation in Plaintiff's ability to deal with the usual stress encountered in a competitive work environment. ECF No. 9 at 19; AR 23, 805.

As a preliminary matter, the listed limitations in the RFC apparently already account for limitations in finishing a workday and managing the stress common to a competitive work environment. Plaintiff argues otherwise by citing cases where the court found that an RFC limiting a plaintiff to simple and routine tasks and limited interactions with coworkers does not adequately account for limitations in completing a workday or workweek. ECF No. 9 at 19-20 (citing *Lamar v. Comm'r of Soc. Sec.*, No. 1:24-CV-00504-EPG, 2025 WL 318294, at *4 (E.D. Cal. Jan. 28, 2025); *Nanney v. Kijakazi*, No. 1:21-CV-00527-HBK, 2023 WL 8242052, at *5 (E.D. Cal. Nov. 28, 2023); *Macias v. Saul*, No. 1:19-CV-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021)). Here, however, the RFC also excludes any work with a "specific

production rate" or "hourly quotas" that an employee has to fulfill. AR 23. In other words, to the extent that a "competitive work environment" implies a job where Plaintiff is held to some external standard, the RFC excludes Plaintiff from such a job.

In any case, as Defendant argues, this argument is overly granular because an ALJ is not required to separately assess each limitation before deciding whether to add it to the RFC. ECF No. 16 at 4. Source-level articulation permits an ALJ to consider all the medical opinions from a single medical source "together in a single analysis using the [five] factors listed" in the regulations, as opposed to "each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Courts in this Circuit have held that this also excuses ALJs from considering "each aspect of a doctor's medical opinions on a line-by-line or opinion-by-opinion basis." *Jamie Allen W. v. O'Malley*, Case No. 4:23-CV-00202-REP, 2024 WL 1465924 at *7 (D. Idaho Apr. 4, 2024); *see also Kimberly C. v. Comm'r of Soc. Sec. Admin*, Case No. 3:24-cv-01624-CL, 2025 WL 2860639 at *6 (D. Or. Oct. 9, 2025) (requiring no separate discussion of a doctor's recommended limitation "of sitting for four hours in an eight-hour workday for thirty minutes at a time" when the ALJ had adequately found the opinion as a whole unpersuasive).

Plaintiff reiterates in reply that it is because the ALJ found Dr. Ewing's opinion "persuasive" that he then erred by not including every limitation in the RFC. ECF No. 17 at 6. "Persuasive" is a subjective term that does not convert the source material into hardened doctrine. Indeed, although the ALJ called the opinion persuasive, he also made it clear that it was only persuasive to the extent that it showed that Plaintiff was "able to perform within the above residual functional capacity." AR 29. He then listed reasons why it did not support a more severe RFC, including the fact that Plaintiff demonstrated adequate concentration during the test to perform work at a non-production rate pace. AR 29 (citing AR 803-04, 835).

At best, the ALJ failed to articulate that when he called Dr. Ewing's opinion persuasive, he meant only in part. Yet an ALJ should not be penalized simply for writing with "less than ideal clarity" if his "path may reasonably be discerned." *See Molina*, 674 F.3d at 1121 (internal citations omitted). Ultimately, the ALJ sufficiently justified his decision to credit Dr. Ewing's

report to the extent that he did, before reconciling it with the other persuasive opinions on file. His treatment of Dr. Ewing's opinion does not present a reversible error.

5. Dr. Lauri Stenbeck

Following the September 2023 assessment, Dr. Stenback found that Plaintiff had mild limitations in performing detailed and complex tasks, performing work activities on a consistent basis and without special or additional supervision, and completing a workday or workweek without interruptions stemming from his psychiatric conditions. AR 836-37. He also would have moderate limitations in dealing with the stresses common to competitive work environments, and marked limitations in accepting instructions from supervisors and interacting with coworkers and the general public. AR 837.

The ALJ found this opinion partially persuasive, except to the extent that it found any "marked" limitations. AR 29. He contrasted such findings against the fact that Plaintiff was polite and made eye contact during the examination, and had a normal mood and cooperative behavior in other contexts. AR 29 (citing AR 452-53, 777, 801, 803-04, 835, 843).

As a threshold matter, Plaintiff argues that by downgrading limitations that Dr. Stenbeck had found "marked" to "moderate," the ALJ exceeded his authority by impermissibly replacing a medical opinion with his own lay opinion. ECF No. 9 at 22 (quoting *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (internal citations omitted)). Yet the Ninth Circuit has acknowledged "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). Were that not so, independently assessing the supportability of a medical opinion would be impossible rather than a requirement. What Plaintiff is asking, that an ALJ assume they are incapable of second-guessing a medical professional, is a perspective with no support in the law.

Plaintiff then challenges both the supportability and consistency analysis in the ALJ's decision. As to supportability, Plaintiff asks why Dr. Stenbeck's findings of politeness and eye contact are enough to discredit her findings of irritated mood and affect, annoyed attitude, impaired attention, impaired memory, and limited ability to make calculations. ECF No. 9 at 22

(citing AR 835-36). As to consistency, most of the evidence is from examinations of physical impairments where mental observation was incidental. *Id.* (citing AR 452, 777, 843). Plaintiff acknowledges the ALJ also cited Dr. Ewing's report, but contends that the ALJ does not explain how Dr. Ewing's findings "negated" all of Dr. Stenbeck's findings. ECF No. 9 at 22.

Put simply, the ALJ did not hold that the findings of both Dr. Stenbeck and other doctors completely negated the proposed limitations. Rather, he found that they support downgrading the limitations at issue from "marked" to "moderate[,]" which was consistent with Dr. Ewing's findings. AR 29, 805. When an ALJ finds multiple opinions somewhat persuasive, or even that some pieces of standalone medical evidence lead to different conclusions, reconciling them may require finding that the severity of the alleged limitations is more or less than asserted in any one opinion. This ties into Defendant's argument as to why "cherry-picking arguments" are rarely meritorious; the administrative record will often include pieces of evidence that undermines each other, such that reasonable minds may disagree as to how they should be reconciled. ECF No. 16 at 9; *White*, 572 F.3d at 285; *Batson*, 359 F.3d at 1193.

The ALJ's reasoning for finding Dr. Stenbeck's opinion unpersuasive as to marked limitations does not present a reversible error.

6. Dr. Christine Rongey

Of the medical sources at issue, Dr. Christine Rongey was the only physician to speak to physical rather than mental limitations. Following an April 2023 examination, she opined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for a total of four hours in an eight-hour workday, sit for up to six out of those eight hours, and only occasionally bend, stoop, crouch, or kneel. AR 829.

The ALJ found this opinion only partially persuasive based on both supportability and consistency. As to supportability, he acknowledged that Plaintiff had reported shortness of breath, a dry cough due to fluid buildup in his lungs, and back pain radiating down his legs. AR 27, 825. During the examination itself, Plaintiff exhibited tenderness to palpation along his back, a "mildly decreased" range of motion, and a "positive" result to the straight leg raising test once the knee was at a 90 degree angle. AR 27, 827. At the same time, Plaintiff was in no acute

distress; walked with a normal gait; had symmetric and clear breathing along with normal cardiovascular findings; had no ataxia, dyspnea, cyanosis, or edema; and reported that he was in no acute distress. AR 27-28, 826-28. That Plaintiff had "good muscle tone and strength in all four extremities" also suggested that he could stand and walk normally. AR 28, 827. As to consistency, although other medical examinations included reports of acute distress, they also reported a normal gait and normal cardiac and pulmonary examination results. AR 28 (citing AR 452, 501, 526, 528, 565, 791, 807, 817-18, 843).

Plaintiff argues that the ALJ's consistency analysis ignores that his heart's ejection fraction remained subpar across multiple tests from 2021 to 2023. ECF No. 9 at 24 (citing AR 806, 810, 820, 840). He also cites two instances where physicians found some form of lower extremity edema. ECF No. 9 at 24 (citing AR 791, 807). As discussed above, the substantial evidence standard means that when both parties can "cherry-pick" pieces of evidence to support different interpretations of the record, the ALJ's interpretation governs at least with regard to physical limitations. *Burch,* 400 F.3d at 679; *White*, 572 F.3d at 285; *Batson*, 359 F.3d at 1193. This is particularly true when Plaintiff's cited evidence primarily concerns the existence of the underlying conditions, rather than how they translate into physical limitations on walking or standing.

Plaintiff also contends that the ALJ failed in the supportability analysis. He asks why Dr. Rongey's findings of tenderness, positive straight leg raising, and reduced range of motion do not support her proposed limitations on standing or walking. ECF No. 9 at 24 (citing AR 827). Yet this is the exact evidence that the ALJ acknowledged before identifying those of Dr. Rongey's findings that also undermined her ultimate opinion, like a normal gait, good muscle tone, and lack of acute distress. AR 27-28, 826-28. To the extent that Plaintiff argues the ALJ should have refuted each supporting piece of evidence individually, Defendant is correct that this exceeds what source-level articulation requires. *See supra* VI.B.4; ECF No. 16 at 4; *Jamie Allen W.*, 2024 WL 1465924 at *7; *Kimberly C.*, 2025 WL 2860639 at *6. More broadly, the substantial evidence standard does not allow Plaintiff to refute an ALJ's analysis by just citing the same evidence that the decision does and arguing that it should have been given more weight.

Plaintiff fails to demonstrate error in the ALJ's reasons for discounting Dr. Rongey's opinion.

**VII. CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 9) be DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 16) be GRANTED;
3. The Commissioner's final decision in this matter be AFFIRMED; and
4. The Clerk of the Court enter judgment for Defendant and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, either party may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Local Rule 304(d). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 19, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE